*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ELING/FOSTER/FITZGERALD, Minors.

UNPUBLISHED
September 15, 2022

No. 360157
Wexford Circuit Court
Family Division
LC No. 20-029035-NA

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her rights to four children under MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions leading to adjudication), (c)(*ii*) (failure to rectify new conditions despite an opportunity to do so), and (j) (risk of harm to the children if returned to the parent's care), arguing that the Department of Health and Human Services (DHHS) failed to make reasonable efforts to reunify the family. We disagree and affirm.

## I. FACTUAL BACKGROUND

The children were previously removed from respondent-mother's home in 2013, and the family was reunified. In 2019, respondent-mother had an open case with Children's Protective Services (CPS) and a safety plan in place, under which respondent-mother agreed not to use illegal substances while caring for the children. In 2020, police officers discovered a backpack containing methamphetamine and a bong and $CO_2$ cartridges that were used for "whipping" in locations that were accessible to the children. Respondent-mother tested positive for methamphetamine and amphetamine, and the children were placed with DHHS. Respondent-mother pleaded responsible to allegations that she had mental health, substance abuse, and housing issues.

Caseworkers immediately recommended that respondent-mother receive counseling services with Community Mental Health (CMH), a substance-abuse assessment, and counseling. Respondent-mother's caseworker scheduled appointments that respondent-mother canceled or rescheduled and then failed to attend. Respondent-mother refused to provide caseworkers with her address, provide releases for DHHS to verify counseling, or meet with caseworkers in person the vast majority of the time. A psychological evaluation was ordered in November 2020, but respondent-mother canceled appointments related to it and was disrespectful to the service provider. She did not receive a psychological evaluation until she was jailed in March 2021. The

-1-

evaluator recommended, in pertinent part, inpatient substance-abuse treatments and efforts to meet with respondent-mother in person to explain and break down her case materials.

Respondent-mother's caseworkers detailed their efforts to meet with respondent-mother in person after the psychological evaluation, explain the case materials to her, and make recommendations. Again, respondent-mother largely refused to meet with caseworkers in person or provide any availability, and she was difficult to get in touch with over the phone or in person. While in jail, she indicated that she was willing to participate in inpatient substance-abuse treatment, but she declined to do so after she was released.

Ultimately, the trial court terminated respondent-mother's parental rights on the basis that she had failed to make progress on any of the barriers to reunifying the family. In her closing statement at the termination hearing, respondent-mother argued that DHHS had not provided reasonable efforts to reunify her and the children under the Americans With Disabilities Act (ADA), 42 USC 12101 *et seq*. The trial court ruled both that respondent-mother had raised the issue too late and that her caseworkers had made impressive efforts to contact and work with respondent-mother, but she was simply not available.

## II. ISSUE PRESERVATION

Respondent-mother did not properly preserve the issue of whether DHHS made reasonable efforts to accommodate her disabilities. A parent must raise an issue before the trial court for it to be preserved for appellate review. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). This Court has stated that to preserve a reasonable efforts issue, a parent must object to a service plan when it is adopted or shortly thereafter. *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). "Where a disabled person fails to make a timely claim that the services provided are inadequate to her particular needs, she may not argue that petitioner failed to comply with the ADA at a dispositional hearing regarding whether to terminate her parental rights." *Id*. Because service plans are updated at 90-day intervals, an ADA challenge may be raised later in the proceedings. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 & 358503); slip op p 2.

The trial court determined that respondent-mother waited too long to raise the issue of the reasonableness of her accommodations by waiting until the termination hearing to raise it. DHHS sought a psychological evaluation in November 2020, and respondent-mother received her psychological evaluation in March 2021, but she did not argue that DHHS had failed to reasonably accommodate her disabilities until her closing argument at the termination hearing. We agree that respondent-mother did not preserve this issue.

## III. STANDARD OF REVIEW

This Court reviews unpreserved constitutional claims for plain error affecting the parent's substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). An error is plain if it is clear or obvious, and it affects substantial rights if it caused prejudice in the outcome of the proceedings. *Utrera*, 281 Mich App at 9.

## IV. ANALYSIS

Respondent-mother argues that DHHS did not make reasonable efforts to reunify her with the children by failing to accommodate her disabilities early in the case, failing to timely obtain a psychological evaluation, and then refusing to follow the recommendations of that evaluation. Each of these arguments is without merit. Regardless, respondent-mother had not demonstrated how additional services would have helped when she did not engage in the services that were offered.

DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). Those efforts include the duty to create a service plan that addresses the issues that led to the trial court's assumption of jurisdiction over the children. *Id*. at 85-86. DHHS fails in this duty if it is aware that a parent has a disability but fails to accommodate that disability when engaging in reunification efforts. *Id*. at 86. DHHS cannot take a passive approach to accommodating parental disabilities. *Id*. at 88. The reasonableness of the efforts that DHHS makes to reunify the parents and children affects the sufficiency of the evidence supporting the trial court's termination decision. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

However, even a parent with disabilities must demonstrate that she can meet her children's basic needs once those children come into the trial court's jurisdiction. *Terry*, 240 Mich App at 28. And a parent raising this argument must establish that the parent would have fared better if other services had been offered. *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

First, respondent-mother argues that DHHS failed to accommodate her clearly apparent disabilities before she was officially diagnosed. Respondent-mother has not established that she would have fared better had services been offered earlier in the case.

Although DHHS does not have the duty to accommodate a disability of which it is unaware, it must make accommodations if it knows of a parent's disability. *Hicks*, 500 Mich at 87-88. Knowledge exists when a disability is obvious or when someone has informed the agency of the disability. See *id*. at 87. In particular, it will not always be apparent at the time that a service plan is adopted that accommodations are needed, which is "especially true with respect to intellectual disabilities, which may present in subtle ways and require fine-tuned, albeit reasonable, accommodations." *Id*. at 89 n 9.

Here, there were indications by respondent-mother's attorney early that she appeared not to understand what he was trying to explain to her, and respondent-mother agreed that she had mental health issues. Respondent-mother's first foster care worker scheduled counseling appointments for respondent-mother at Catholic Human Services and determined that respondent-mother qualified for services at CMH, but respondent-mother missed both sessions. Subsequently, respondent-mother missed sessions with her therapist at CMH, she would not release information about her progress to her caseworker, she stated that she would not work with the drug screener, and she did not participate in parenting education.

The caseworker at the time before and after respondent-mother's psychological evaluation was conducted testified that she could not read the paperwork with respondent-mother because she would just take the papers and walk away; respondent-mother did not want to go through the paperwork with the caseworker. Respondent-mother would not meet with her to discuss the case

service plan, which the caseworker created specifically for respondent-mother. We conclude that the evidence showed that respondent-mother would not engage with services and service providers, and engaged in the same behavior after she received the psychological evaluation. Considering that, there is no indication that receiving the evaluation earlier would have affected the outcome of her case. Respondent-mother has not established a plain error affecting her substantial rights regarding the efforts of DHHS to provide her with services before the evaluation.

Second, respondent-mother argues that DHHS failed to make reasonable efforts to reunify her with the children by failing to timely obtain a psychological evaluation. We reject this argument because DHHS sought to obtain a psychological evaluation several times, including by making appointments for respondent-mother, but the record shows she simply refused to engage.

While DHHS has the responsibility to create a service plan to rectify the issues that brought the children into care, the parent has a commensurate responsibility to participate in the services that are offered. *Atchley*, ___ Mich App at ___; slip op p 3. Here, DHHS sought a psychological evaluation in November 2020, but the initial provider was unable to provide services because respondent-mother failed to attend her appointment and, according to the provider, was disrespectful. The worker made an appointment with a second provider, but respondent-mother did not attend. Respondent-mother did not participate in an evaluation until March 2021, when she was in jail. Respondent-mother was granted the opportunity to benefit from a psychological evaluation early in the case, but she did not attend her evaluation appointments and did not reschedule them. She did not engage in her responsibility to take advantage of this service.

Third, respondent-mother argues that DHHS failed to make reasonable efforts to reunify her with the children because it ignored the recommendations in her psychological evaluation for inpatient treatment. As an initial matter, the psychological evaluation did not require DHHS to provide respondent-mother with inpatient substance-abuse treatment at all costs by having her admitted to a treatment program against her will. Respondent-mother's psychological evaluator opined that respondent-mother "needs to be involved in a substance abuse recovery program." However, he also stated that a person could not be "sent to recovery programs and substance abuse programs and expect a positive result." The person was required "to recognize on their own that their life circumstances are in serious jeopardy if they don't develop the tools necessary to maintain sobriety." The evaluator stated that respondent-mother "might" benefit from a residential treatment program, but in order to benefit from the program, respondent-mother "needs to be fully on board with her need for and participation in her own treatment." There is no basis from which to conclude that DHHS should have committed respondent-mother to an inpatient treatment program against her will. Doing so was not recommended by her psychological evaluation, which instead stated that respondent-mother needed to engage on her own in order for treatment to succeed.

Respondent-mother's final caseworker testified that she did not require respondent-mother to attend inpatient substance abuse and mental health treatment, but she "was highly suggesting it," as it was recommended in respondent-mother's psychological evaluation. Respondent-mother's therapist indicated that she had requested that respondent-mother go to an inpatient treatment program after her release from jail. While she was incarcerated, respondent-mother had stated that she was willing to go, but following her incarceration, she stated that she would not be looking into it, had a lot on her plate, and did not want to do it.

Again, respondent-mother simply did not engage in her responsibility to participate in offered services. See *Atchley*, ___ Mich App at ___; slip op p 3. We agree with the trial court that DHHS provided reasonable efforts to reunify the family, but respondent-mother simply failed or refused to engage in services. Respondent-mother has not identified on appeal how she would have fared better had other services been offered.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford